### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MARYLAND

```
T.W.                                *
                                    *
          v.                        *   Civil Action WMN-09-2932
                                    *
CONAGRA FOODS, INC.                 *

     *    *    *    *    *    *    *    *    *    *    *    *
```

### MEMORANDUM

Pending before the Court are two motions filed by Defendant ConAgra Foods, Inc. (ConAgra): a motion to exclude Plaintiff's expert testimony, ECF No. 30; and a motion for summary judgment, ECF No. 29. Both motions are fully briefed and ripe for review. Upon consideration of the pleadings and applicable law, the Court will deny both motions.

### I.   BACKGROUND

Plaintiff T.W., a minor, alleges he ate a Banquet brand turkey pot pie manufactured by ConAgra that was contaminated with salmonella. Plaintiff further claims the salmonella caused severe illness and ultimately appendicitis, resulting in the removal of his appendix. While Plaintiff was hospitalized, he was treated by Dr. Robert Ancona, whom Plaintiff now seeks to rely upon as an expert witness. ConAgra argues Dr. Ancona's testimony should be excluded under Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579 (1993), because Dr. Ancona's differential diagnosis was unreliable, his reasoning is not

scientifically valid, and his opinion is overly prejudicial under Federal Rule of Evidence 403.  Because ConAgra claims Dr. Ancona's testimony should be excluded, ConAgra also claims Plaintiff has failed to establish a genuine dispute of material fact.  Plaintiff opposes both motions.

II.  MOTION TO EXCLUDE EXPERT TESTIMONY

Federal Rule of Evidence 702 governs the admissibility of expert testimony.  Such testimony should only be admitted if the Court finds it is relevant, helpful and reliable.  See Daubert, 509 U.S. at 589, 591.  To that end, courts consider several factors bearing on the scientific validity of the proffered expert testimony.  The factors include, inter alia, whether a theory or method has been tested or subjected to peer review and publication, and whether the theory or method enjoys general acceptance within the relevant scientific community.  Id. at 593-94.  "The inquiry envisioned by Rule 702 is . . . a flexible one.  Its over-arching subject is the scientific validity and thus the evidentiary relevance and reliability—of the principles that underlie the proposed submission."  Id. at 594-95.  When assessing the admissibility of expert testimony, the Court must also consider other applicable evidentiary rules, including Federal Rule of Evidence 403.  Id. at 595.

Where the proffered testimony bears on a medical diagnosis, one generally accepted and standard scientific technique for

establishing the cause of a medical problem is differential

diagnosis.  Westberry v. Gislaved Gummi AB, 178 F.3d 257, 262

(4th Cir. 1999).  A differential diagnosis "generally is

accomplished by determining the possible causes for the

patient's symptoms and then eliminating each of these potential

causes until reaching one that cannot be ruled out or

determining which of those that cannot be excluded is the most

likely."  Id. (citations omitted, emphasis added).  Thus, a

differential diagnosis need not definitively rule out every

possible alternative to be valid, so long as the diagnosis

considers seriously each alternative before dismissing it.  Id.

at 265-66; see also, Cooper v. Smith & Nephew, Inc., 259 F.3d

194, 202 (4th Cir. 2001).

The testimony in question involves Dr. Ancona's position

that Plaintiff's appendicitis was caused by his salmonella

poisoning.  ConAgra argues Dr. Ancona's differential diagnosis

was deficient and unreliable because he did not properly

consider all alternatives.  ConAgra further argues the proffered

testimony is not scientifically valid because Dr. Ancona relied

upon his "experience and clinical knowledge" to make his

assessment and not any specific peer-reviewed publication.  Mot.

Exclude 6, ECF No. 30-1.  Last, ConAgra claims the testimony is

overly prejudicial and misleading.

To reach his conclusion, Dr. Ancona considered several potential causes of the appendicitis, including streptococcus group-F, e. coli, bacteroides, "stuff,"[1] tobacco use and marijuana use. Dr. Ancona's deposition testimony indicates he thoroughly considered all such alternatives in light of Plaintiff's medical history and a review of relevant literature. See Ancona Decl. ¶ 4; Ancona Dep. 66:14-68:1, Jan. 7, 2011; see also Ancona Dep. 51:2-17 (analyzing and dismissing streptococcus group-F as the likely cause of Plaintiff's appendicitis); id. at 52:21-53:17 (dismissing e. coli); id. at 57:13-19 (dismissing bacteroids); id. at 60:13-61:9 (dismissing "stuff"); id. at 81:15-20 (dismissing tobacco and marijuana use). Upon consideration of all potential alternatives, Dr. Ancona then concluded: "[Plaintiff] could have other possible causes of . . . his appendicitis . . . . But the timing – and all the other things we discussed . . . make[] [salmonella] the more likely [cause] than any of the other scenarios." Id. at 82:5-14. Because a valid differential diagnosis need only determine the most likely cause of a medical malady and need not determine the only possible cause, Dr. Ancona's proffered testimony is based upon a sufficiently valid and reliable diagnostic method.

---

[1] Dr. Ancona describes "stuff" as "a fecalith" or "fiber and old organisms . . . that can take some mineral out of your food . . . and create what looks like a stone that . . . obstructs the appendix." Mot. Exclude 3 n.1, ECF No. 30-1.

Moreover, Dr. Ancona's conclusions are reliable under Daubert. Although ConAgra claims the relevant medical literature documenting salmonella as a cause of appendicitis is thin, Dr. Ancona testified that "several textbooks" and "a few case reports" cite previous examples of a causal link. Id. at 24:3-25:1. Moreover, Dr. Ancona reviewed "several large series" and texts demonstrating salmonella typhi, a related pathogen, as a cause of appendicitis. Id. at 25:11-26:7. Dr. Ancona may not have previously observed personally a case where appendicitis was caused by salmonella, but he relied on his extensive clinical experience, a comprehensive literature review, and a thorough differential diagnosis grounded in reliable scientific methods to form his position. Consequently, his conclusions past muster under Daubert as relevant and reliable and, as such, Dr. Ancona's testimony will not create the substantial unfair prejudice or jury confusion about which ConAgra complains. ConAgra's motion to exclude Dr. Ancona's testimony will be denied.

## III. MOTION FOR SUMMARY JUDGMENT

Summary judgment is proper if the evidence before the Court, consisting of the pleadings, depositions and declarations, establishes that there is no genuine dispute of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v.

Catrett, 477 U.S. 317, 322 (1986).  A party seeking summary judgment bears the initial responsibility of informing the Court of the basis of its motion and identifying the portions of the opposing party's case which it believes demonstrate the absence of a genuine issue of material fact.  Celotex, 477 U.S. at 323. If the moving party overcomes its initial burden, the non-moving party must, in order to withstand the motion, produce its own evidence in the form of depositions, declarations, or other documentation demonstrating that a triable issue of fact exists for trial.  Id. at 324.  While unsupported speculation is insufficient for this purpose, Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987), any dispute over facts that may affect the outcome of the case is considered "material" and will defeat a summary judgment motion, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).  At all times, the non-moving party is entitled to have "all reasonable inferences . . . drawn in its respective favor."  Felty, 818 F.2d at 1128.

ConAgra raises two arguments in support of its summary judgment motion.  First, ConAgra submits that Plaintiff has no evidence showing the turkey pot pie in question was contaminated with salmonella and therefore defective.  Second, ConAgra submits Plaintiff cannot prove his consumption of the allegedly defective pot pie proximately caused his appendicitis and related medical maladies.  This second argument depends largely

6

upon the exclusion of Dr. Ancona's testimony regarding causation, but as discussed above the Court will deny ConAgra's motion to exclude his expert opinions.

Plaintiff admits he cannot prove via direct evidence that the pot pie in question was contaminated because the pot pie consumed by Plaintiff was not preserved for testing. Plaintiff therefore seeks to prove the contamination via circumstantial evidence. Summ. J. Opp'n 7, ECF No. 31. For example, Plaintiff testified at deposition he was a regular eater of pot pies and consumed the pot pie at issue on either September 16 or 17, 2007. T.W. Dep. 19:11, 26:3-7, Jan. 6, 2011. Within a few days, he became ill, despite being an otherwise healthy and active fifteen-year-old. Plaintiff was first hospitalized on September 19, 2007. Pl.'s Interrog. Resp. ¶ 7. He was treated and released but returned three days later on September 22, 2007, at which time the hospital performed several tests. Id.; Summ. J. Opp'n Ex. 6. Plaintiff underwent surgery to remove his appendix the next day. Summ. J. Opp'n Ex. 7. Among the tests completed upon Plaintiff's second hospitalization was a stool culture. The stool culture tested positive for salmonella serotype 4,5,12:1:-.[2] Summ. J. Opp'n Ex. 11.

---

[2] The serotype identifies the precise subspecies of salmonella under review. There are over 2,400 different serotypes of salmonella, some more common than others. See F. W. Brenner et

Shortly thereafter, Plaintiff's guardian received several

phone calls from the Baltimore County Health Department, the

Maryland Health Department, and the Center for Disease Control

(CDC).  Brown Dep. 39:5-42:6, Jan. 6, 2011.  Some or all of

these organizations were allegedly investigating a multi-state

salmonella outbreak at the time.  The CDC's final report found

salmonella serotype 4,5,12:1:- contamination in turkey pot pies

manufactured by ConAgra on either July 13, 2007, or July 31,

2007.  Summ. J. Opp'n Ex. 13.

In response to the investigation, ConAgra also conducted

its own testing on its turkey pot pies through the Center for

Food Safety at the University of Georgia.  Summ. J. Opp'n Ex.

14.  Like those of the CDC, these tests revealed salmonella

contamination.  Moreover, the University of Georgia's findings

were later confirmed by the Department of Food Science at

Cornell University.[3]  Summ. J. Opp'n Ex. 15.  The Cornell

---

al., Guest Commentary, Salmonella Nomenclature, 38 J. Clinical
Microbiology, no. 7, 2465-67 (July 2000).

[3] ConAgra argues all these test results are inadmissible hearsay
for want of foundation and authenticity.  At a minimum, the CDC
report and the state of Maryland's report regarding Plaintiff's
diagnosis are public records and therefore admissible absent any
further showing, see Fed. R. Evid. 803(8), and they alone are
sufficient to demonstrate facts from which a jury could infer a
product defect.  Moreover, ConAgra has presented no evidence
challenging any of the reports aside from noting their lack of
foundation.  Plaintiff is reminded that any evidence he seeks to
rely upon at trial is subject to all rules regarding
admissibility set forth in the Federal Rules of Evidence.

University tests identified salmonella serotype 4,5,12:1:- in

ConAgra pot pies, and they further revealed "XbaI and Blnl PFGE

patterns" in each salmonella isolate tested, patterns which

match those found in Plaintiff's salmonella isolates.[4]  Id.;

Summ. J. Opp'n Ex. 16.

In sum, Plaintiff alleges he ate a Banquet turkey pot pie

in September 2007.  Shortly thereafter, he tested positive for

salmonella serotype 4,5,12:1:-.  Around the same time, several

independent laboratories identified the exact same salmonella

serotype in several other Banquet turkey pot pies.  Thus, while

Plaintiff cannot present tests conducted directly on the pot pie

he consumed proving the pot pie was contaminated with

salmonella, he can present strong circumstantial evidence to

that end.[5]  This is sufficient to establish a genuine dispute of

material fact as to the existence of a defect.  As to causation,

---

[4] Pulsed Field Gel Electrophoresis (PFGE) is the analytical
process used by Cornell University to identify salmonella
isolate subtypes.  That the pot pie-derived salmonella tested by
Cornell University and the salmonella derived from Plaintiff's
culture share a molecular subtype is further evidence from which
a jury could infer a product defect.

[5] Related to Plaintiff's circumstantial evidence, ConAgra argues
that Plaintiff should not be permitted to introduce evidence
showing that ConAgra recalled its turkey pot pies around that
time.  ConAgra has not moved the Court in limine to exclude such
recall evidence, but even if it were excluded from trial, there
is ample evidence aside from the recall from which a fact-finder
may reasonably infer a product defect.

the Court will allow Dr. Ancona's expert testimony that the salmonella was most likely the cause of Plaintiff's appendicitis.  ConAgra's contention that Plaintiff has proffered no evidence creating an issue of material fact regarding causation is therefore incorrect, and the Court will deny ConAgra's summary judgment motion.

IV.  CONCLUSION

For the foregoing reasons, ConAgra's motion to exclude Plaintiff's expert testimony, ECF No. 30, and ConAgra's motion for summary judgment, ECF No. 29, will be denied.  The Court will issue a separate order to that effect.


                                    _____/s/_____
                                    William M. Nickerson
                                    Senior United States District Judge

May 10, 2011